**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

HOWARD MICHAEL CAPLAN,  CASE NO.: 0:22-cv-61386-WPD

    Plaintiff,

v.

CGC INDUSTRIES INC., a Florida Profit
Corporation d/b/a CITY GLASS, ROBERT
J. PANDOS AND FRANCES PANDOS, as
Trustees under The Pandos Family Living
Trust,

    Defendants.
_____/

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants CGC INDUSTRIES, INC. and ROBERT J. PANDOS and FRANCES PANDOS, as Trustees under the Pandos Family Living Trust, by and through their undersigned counsel and pursuant Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby submit their Memorandum of Law in opposition to Plaintiff's Motion for Summary Judgment [D.E. 26], as follows:

**I.**      **Introduction and Summary of Argument**

This is an action brought under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 et seq. ("Title III" of the "ADA"). It is one of more than 350 such cases that Plaintiff has filed in the Southern District of Florida, *which is at least 250 more ADA lawsuits than*

*Plaintiff can remember filing*.[1] *SOF, ¶28*.[2] Plaintiff is represented in his ADA lawsuits by Ronald Stern, Esq., who Plaintiff has known "since he was one year old." *SOF, ¶29*. Other than filing ADA lawsuits, Plaintiff spends his time sitting around, frustrated, watching a lot of television. *SOF, ¶34*. Plaintiff files ADA lawsuits because he considers his litigation to be "charity work." *SOF, ¶30*.[3]

Here, Plaintiff has sued a property operated as a business known as City Glass, located at 200 N. Dixie Highway, in Hollywood, Florida. *SOF, ¶21, 22*. City Glass is a glass and glazing company whose typical client is a contractor or subcontractor that needs window glass and installation for renovation or remodeling projects. *SOF, ¶23*. Plaintiff has not submitted any evidence showing that City Glass is a "place of public accommodation" under the ADA. *SOF, ¶14*. City Glass has one employee, its owner, Stefan Pandos. *SOF, ¶26*. Mr. Pandos answers the phones at City Glass and is also frequently in the field for glass installation projects. *SOF, ¶26*. For that reason, in order to purchase any glass from the business, customers must call Mr. Pandos and coordinate with him. *SOF, ¶26*. Plaintiff in this case did call the business and asked questions, but never followed up any further. *SOF, ¶27*. This is consistent with Plaintiff's testimony in a prior case, that he calls businesses that he sues because he is "bored sitting home and doing nothing."[4]

---

[1]  **Q:** How many [ADA lawsuits] have you filed?
   **A:** I'm thinking. Maybe somewhere between 50 and 100.
   **Q:** Between 50 and 100?
   **A:** Uh-huh.
   **Q:** If I told you the number was more like 360 would that surprise you?
   **A:** Yes. But I'll take your word for it.

[2] Defendants' Statement of Facts ("SOF") has been filed contemporaneously herewith.

[3]  **Q:** Okay. In 2018 you filed 123 cases by my count. Is there a reason that you then suddenly were very active with ADA filings?
   **A:** Probably no different than charity work. People do charity work they stop for a while. They start for a while.

[4]  **Q:** When you called him . . . what was the purpose of the call?
   **A :** Curiosity.

Plaintiff's Complaint alleges that Defendants are in violation of the "2012 ADAAG Standards" as a result of ADA violations present at the subject property. *D.E. 1, ¶15.* The property at issue in this case was built in the 1960s and has not been renovated or remodeled since the 1980s. *SOF, ¶21.*[5] The property includes a building that fronts N. Dixie Highway, and that looks like a showroom or store with parking in the front. *SOF, ¶25.* At first glance (or driving by), this could appear to be a store or gallery open to the public with a parking lot, but the showroom has been closed for years, and the interior is now industrial warehouse space. *SOF, ¶25.* The parking in front of the old showroom is no longer public parking, because the showroom is no longer open to the public. *SOF, ¶25.* On the side of the subject building there is an open paved area by the warehouse bays and office, where vans or trucks sometimes pull up to take delivery of glazing materials. *SOF, ¶24.* Plaintiff was never there. *SOF, ¶5.*

On January 31, 2023, Plaintiff filed his Motion for Summary Judgment in this case. *D.E. 26.* In support, he filed the pre-suit report of his ADA expert, Jon Kronillis. *D.E. 23.* This report was served on Defendants pursuant to Fed. R. Civ. P. 26(a)(2) on September 22, 2023. *SOF, ¶35.* The report lists alleged violation of the "2012 ADAAG," and the same list was "cut and paste" into Plaintiff's Affidavit, as violations that he "personally encountered."[6] *Compare D.E. 22-1, ¶5 with D.E. 23-1, Pg. 5.* The expert report contains nothing more than a numerated list of alleged violations. *D.E. 23-1, Pg. 5.* It contains no expert opinion on whether the alleged barriers can be removed, and if so, whether such removal is readily achievable or technically feasible. *D.E. 23-1,*

---

**Q:** Curiosity in what sense?
**A:** I get bored.
**Q:** You get bored?
**A:** Yeah, I get bored sitting home and doing nothing.

[5] Accordingly, as explained further below, Defendants' do not have any obligations under the 2010 ADAAG.

[6] There is no such thing as the 2012 ADAAG. The 2010 ADAAG became enforceable as to certain construction (*not including* the property here at issue), as on March 15, 2012.

*Pp. 5-6.* That report was then attached to an affidavit and filed in support of Plaintiff's current Motion for Summary Judgment. *D.E. 23-1.* The affidavit adds new conclusions for the first time post-discovery, which were never disclosed within the expert report, including that modification to comply with the ADA can be achieved "without much difficulty or expense." *D.E. 23-1, Pg. 2, ¶5.*

These new (post-discovery) conclusions are not supported by any facts or analysis or explanation whatsoever. *D.E. 23-1, Pg. 2, ¶5.* They are mere conclusions. Plaintiff's expert report and affidavit contain none of the expert information that the Eleventh Circuit Court of Appeal requires for an ADA Plaintiff to meet his initial burden of persuasion. Plaintiff has already been cautioned by other Courts in this District that this same affidavit and pre-suit expert report (which are his boilerplate) are insufficient to establish ADA violations. *SOF, ¶9.* Plaintiff's counsel has lost summary judgment based on the insufficiency of Mr. Kronillis' same "expert" report (as explained in detail below). As such, neither Plaintiff nor his counsel should have any misunderstanding about the fact that they are continuing to litigate this case without the baseline expert evidence needed to avoid judgment on partial findings at any trial in this case.

Plaintiff's motion for summary judgment should be denied. Plaintiff has failed to evidence the absence of genuine issues of material fact, including critical points on which Plaintiff bears the burden of proof. Indeed, Plaintiff's clear evidentiary failings compel the granting of *Defendants'* pending motion for summary judgment [D.E. 21].

**II.     Summary Judgment Standard**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-

4

moving party." <u>Miccosukee Tribe of Indians of Fla. v. United States</u>, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). A fact is material if "it would affect the outcome of the suit under the governing law." <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See* <u>Davis v. Williams</u>, 451 F.3d 759, 763 (11th Cir. 2006). The Court cannot weigh conflicting evidence. *See* <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. <u>Id.</u>

Significantly, as to those issues on which Plaintiff bears the burden of proof at trial, Plaintiff

> must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.

<u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation and internal quotation marks omitted; emphasis in original).

### III. Title III of the ADA

#### A. Plaintiff's Initial Burden of Proof for a Title III Claim

A plaintiff alleging Title III ADA discrimination must initially prove that (1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA. <u>Norkunas v. Seahorse NB, LLC</u>, 444 Fed. Appx. 412, 416 (11th Cir. 2011). "Further, if the claim alleges discrimination due to an architectural barrier, the plaintiff is also required to show that it is

a barrier prohibited by the ADA, the removal of which is 'readily achievable.'" Pinero v. 4800 W. Flagler, L.L.C., 430 Fed. Appx. 866 (11th Cir. 2011).

### B. Plaintiff's Burden to Establish "Readily Achievable" Barrier Removal

Plaintiff must show "(1) that an architectural barrier exists; *and* (2) that [Plaintiff's] proposed method of architectural barrier removal is 'readily achievable,' i.e., 'easily accomplishable and able to be carried out without much difficulty or expense' under the particular circumstances of the case." Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273 (11th Cir. 2006). To show that the removal of barriers is readily achievable, Plaintiff *must* provide evidence of "(1) a specific design to remove the barriers alleged; (2) the cost of removal or of the proposed remedy; and (3) the effect on the finances and operation of the facility." Id. at 1274.[7]

### C. Article III Standing and the ADA

Plaintiff has the burden to establish standing and thus subject matter jurisdiction. Guillaume v. Hyde, 2020 WL 3317042, at *3 (S.D. Fla. June 18, 2020). To prove standing, Plaintiff must show: (1) an injury-in-fact; (2) a causal connection between the injury-in-fact and Defendants' action; and (3) that the injury is redressable. Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001). To obtain injunctive relief, Plaintiff must also show there is a real and immediate threat of future injury. Id. The injury in fact must be: (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. Lujan v. Defenders Of Wildlife, 504 U.S. 555, 560

---

[7] At page 10-11 of his motion for summary judgment, Plaintiff cites Gathright-Dietrich for the proposition that "a plaintiff must only present sufficient evidence so that 'defendant can evaluate' the proposed solution." That statement is ***at best*** misleading, since Plaintiff completely ignores that in Gathright-Dietrich the Eleventh Circuit specifically mandated the nature of such "sufficient evidence," unequivocally holding that a plaintiff ***must*** present evidence of: "(1) a specific design to remove the barriers alleged; (2) the cost of removal or of the proposed remedy; and (3) the effect on the finances and operation of the facility." Id. at 1274. In any event, here, Plaintiff has not even proposed any solution to evaluate at all.

(1992). As the Supreme Court confirmed in Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1548 (2016), a "'concrete' injury must be '*de facto*'; that is, it must actually exist."

Plaintiff's "standing to seek the injunction requested depend[s] on whether he [i]s likely to suffer future injury." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1334 (11th Cir. 2013) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)). Plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir. 2001). "That requires 'a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury.'" Marod Supermarkets, 733 F.3d at 1334 (quoting Shotz v. Cates, 256 F.3d 1077, 1082 (11th Cir. 2001)) (emphasis in original); see also Wooden, 247 F.3d at 1284 (the Eleventh Circuit "has often emphasized that to obtain prospective injunctive relief a plaintiff must show that he faces a *substantial likelihood* of injury in the future").

A Title III plaintiff must evidence facts "from which this Court can infer that Plaintiff could not fully enjoy Defendants' facilities, services, goods, and amenities *because of his encounter with any of the barriers listed*." Campbell v. Grady's Bar Inc., 2010 WL 2754328, at *1 (S.D. Fla. July 12, 2010). Otherwise, the "Court is left to guess the manner in which Plaintiff suffered alleged discrimination under the ADA." *Id.;* see also Access Now, Inc. v. S. Florida Stadium Corp., 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001) (a plaintiff's entry into or onto a property "does not automatically confer upon him a presumption that he was injured by any and all architectural barriers therein; his entitlement to relief depends on his showing that he was in fact injured, or subject to discrimination, as a result of the alleged violations"); Stringham v. 2921 Orlando Drive LLC, 2014 WL 2215769, at *2 (M.D. Fla. May 28, 2014) ("A laundry list of alleged barriers together with the barest allegation that Plaintiff either encountered some barrier or is a tester is

simply insufficient to show an injury-in-fact"); Hilson v. D'More Help, Inc., 2015 WL 1737688, at *5 (S.D. Fla. Apr. 16, 2015) (dismissing Title III claim where plaintiff merely "recite[d] a barebones, pro forma, narrative of Defendant's alleged Title III noncompliance").

Even as a self-described "tester," Plaintiff must still plead plausible facts sufficient to establish standing and entitlement to injunctive relief – the only relief available under Title III of the ADA. Marod Supermarkets, Inc., 733 F.3d at 1328. In Marod Supermarkets, the Eleventh Circuit made clear that "[e]ach plaintiff must establish standing on the facts of the case before the court. *That is equally as true about a regular customer of a public accommodation as it is for a tester* ...." Id. at 1340. Simply put, a plaintiff's mere status as a "tester," standing alone, is insufficient to confer standing. See, e.g., Stringham v. 2921 Orlando Drive LLC, 2014 WL 2215769, at *2 (M.D. Fla. May 28, 2014) ("'th[e] conclusion [that the plaintiff is a tester] alone is not enough'") (quoting Marod Supermarkets, 733 F.3d at 1340 (alteration in original)); Longhini v. J.U.T.A., Inc., 2018 WL 1305909, at *4 (M.D. Fla. Mar. 13, 2018) ("the tester motive has been recognized as legitimate, but a desire to return to test for ADA compliance has not been deemed sufficient, without more, to support standing").

### III. Plaintiff's Motion for Summary Judgment Should be Denied[8]

---

[8] Plaintiff opens his Motion for Summary Judgment by arguing that he has won summary judgment in three other cases "supported by similar affidavits." *D.E. 26 at Pg. 1, citing* Caplan v. All American Auto Collision, Inc., 18-cv-61120-JIC (S.D. Fla. January 10, 2019); Caplan v. Sky Motel, Inc., 19-cv-62985-CMA (S.D. Fla. April 16, 2020); Caplan v. Kirwan Enterprises, Inc., 18-cv-62565-KMW (S.D. Fla. January 30, 2019). This statement is misleading. In Kirwan Enterprises, Inc., Plaintiff's request for summary judgment ***was unopposed***. Id. at D.E. 28 ("Defendant's did not oppose the motion for summary judgment . . . Defendant has admitted that removal of barriers to access at the subject property is readily achievable"). In Sky Motel, Inc., 19-cv-62985-CMA, summary judgment was entered by default after Defendants' failure to respond [D.E. 38]. Id. at D.E. 46: ("the Court granted Plaintiff's Motion for Summary Judgment on the merits after Defendant failed to file a response within the time allotted"). Finally, in All American Auto Collision, Inc., 18-cv-61120-JIC, Plaintiff prevailed on summary judgment where the Defendant failed to file any response to Plaintiff's statement of facts and admitted the existence of barriers to access and its ability to cure those barriers. Id. at D.E. 51, Pg. 6 ("**Defendants' main contention is that they are attempting to remedy the ADA violations, and that "[t]he real issue in dispute is the plaintiff's counsel's demand for exorbitant fees to 'settle' this case and his threats to take it to trial for even more exorbitant fees if he is the prevailing party**. D.E. 45 at 5. Be that as it may, the Court cannot find that a genuine issue of material fact exists without some form of evidence from Defendants that is admissible on summary judgment").

Plaintiff's motion wholly fails to "show *affirmatively* the absence of a genuine issue of material fact" for all issues on which Plaintiff bears the burden of proof by reference to "credible evidence ... that would entitle it to a directed verdict if not controverted at trial." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation and internal quotation marks omitted; emphasis in original).

### A.     **Plaintiff Fails to Evidence Actionable Architectural Barriers**

Plaintiff purports to "evidence" the existence of architectural barriers by copying-and-pasting the list of purported ADA violations alleged in his complaint and by reference to an affidavit and report by his supposed "expert witness."[9] Plaintiff's conclusory affidavit is insufficient as a matter of law to establish the existence of architectural barriers. Plaintiff's affidavit purports to reference the 2010 ADA Standards, but Plaintiff has not evidenced any basis for citing the 2010 ADA Standards as opposed to the 1991 ADA Standards. As the court explained in Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc., 975 F. Supp. 2d 1374, 1391 n. 11 (N.D. Ga. 2013):

> Whether compliance with the 1991 or the 2010 Standards is required depends on the date an owner completed its application for a building permit, or the date construction began if no permit was required. If before September 15, 2010, compliance with the 1991 Standards is required. Id. § 36.406(a)(1). If between September 15, 2010, and March 15, 2012, compliance with either the 1991 Standards or the 2010 Standards is required. Id. § 36.406(a)(2). If on or after March 15, 2012, compliance with the 2010 Standards is required. Id. § 36.406(a)(3).

Despite having the burden of proof, Plaintiff has failed to evidence the age of the property,

---

[9] Plaintiff also cites to Defendants' interrogatory answers, which state that there are no marked parking spaces at all – accessible or inaccessible – on the subject property, as somehow establishing the existence of ADA violations (presumably meaning architectural barriers). As set forth within the accompanying Statement of Facts, Defendants discovery responses stated the truth that there is no marked parking *for anyone* at the property, and did not admit to the existence of any barriers to access. *SOF, ¶11.*

9

the application date for a building permit or the date construction began if no permit was required. And in fact, the undisputed evidence here is that the subject property was built in the 1960s and not renovated or remodeled since the 1980s [*SOF, ¶21*], which means that Plaintiff's Complaint, his affidavit, his "expert" report, and his "expert" affidavit, all cite to and rely upon a version of the ADAAG that does not apply to the property at issue in this case. There is therefore not even a pending allegation in this case that Defendants violate any ADA requirement that is applicable to them at all.

In addition, Plaintiff is not a contractor or subcontractor (since he holds no professional licenses - *SOF, ¶33*), alleges no facts explaining why he would need glass manufactured, and never even visited the property in the first place. *SOF, ¶5*. He has also failed to address the fact that there are no marked parking spaces for anyone – only spaces in front of a disused showroom that is closed to the public, and a paved area for picking up glass. It is not enough for Plaintiff to simply declare his conclusion that there are ADA violations at the property – he has not explained how that is so. *See, e.g.,* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value") (citation and internal quotation marks omitted); St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co., 2019 WL 2013136, at *1 (S.D. Fla. Mar. 7, 2019) (affidavits which set forth conclusory arguments are improper for a summary judgment motion); St. Elien v. All County Envtl. Services, Inc., 2020 WL 1689906, at *1 (S.D. Fla. Feb. 19, 2020) (on summary judgment, affidavit cannot be conclusory and contradicted by record evidence).

Further, this Court should not credit the report and declaration from Plaintiff's "expert" Mr. Kronillis. These materials fail to include any actual measurements, data, analysis or photographs. Instead, the report and declaration merely consist of *ipse dixit* statements identifying

purported barriers – a series of legal conclusions couched as "opinions." Furthermore, Mr. Kronillis' report and declaration fail to explain or justify his citation to the 2010 ADA Standards (which as set forth above, is inapplicable in this case, because of the age of the property). There is no mention of the age of the property, the application date for a building permit or the date construction began if no permit was required. Accordingly, Mr. Kronillis' report and declaration utterly fail to assist the Court in determining whether the 1991 or 2010 ADA Standards are applicable – and, like Plaintiff's conclusory affidavit, they fail to evidence the existence of actionable architectural barriers.[10] Plaintiff has been warned by other Courts of this District about the insufficiency of Mr. Kronillis' boilerplate conclusory pre-suit reports and affidavit. *SOF, ¶9*.

### B. Plaintiff Fails to Evidence that the Removal of Alleged Barriers is Readily Achievable

Discrimination is the failure to remove architectural barriers "where such removal is readily achievable." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013)(quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). Specifically:

> [T]he plaintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case.

Kennedy v. Omegagas & Oil, LLC, 748 F. App'x 886, 893 (11th Cir. 2018).

---

[10] Without a qualified and competent expert witness, Plaintiff cannot prevail in this Title III action as a matter of law. As the court noted in Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358, 1371 (S.D. Fla. 2004):

> Plaintiffs are not equipped by knowledge, training or education in the many technical and engineering elements that can be affected by particular removal methods. *Thus, the suggestion of methods of removal and a showing that the suggested methods are readily achievable* **require** *guidance by an expert*.

Showing that barrier removal is readily achievable requires evidence of the following:

> (A) the nature and cost of the action needed;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Barberi vs. Kerala Corp., 2020 U.S. Dist. LEXIS 245819 (S.D. Fla. 2020); *see also* Gathright-Dietrich, 452 F.3d at 1273 (11th Cir. 2006)(listing the same as ten separate factors).

And indeed, "[P]laintiff's initial burden is not light." Id. Significantly,

> [P]laintiff must present sufficient evidence so that [Defendants] can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility. Without evidence on these issues, [Defendants] cannot determine if [they] can meet [their] subsequent burden of persuasion.

Id. *citing* Kennedy v. Omega Gas & Oil, LLC, 748 F. App'x at 893 (11th Cir. 2019).

To meet its initial burden, Plaintiff requires expert opinion on these issues. Ass'n for the Disabled Ams. v. City of Orlando, 153 F. Supp. 2d 1310, 1319 (M.D. Fla. 2001)(court is unable to determine whether a modification is possible without expert testimony); Access Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1371 (granting summary judgment to defendant where "Plaintiff completely failed to suggest a plan of modification, much less demonstrate that such modification would be readily achievable").

12

In Kerala Corp., 2020 U.S. Dist. LEXIS 245819 – an ADA case in which Mr. Stern represented the plaintiff – summary judgment was entered against the plaintiff because, exactly as here, his expert report (from Mr. Kronillis, the same expert that Plaintiff retained in this case), merely listed alleged violations, without providing any of the other expert information needed for a plaintiff to meet its burden of persuasion; in December 2020 (eighteen months before this lawsuit was filed and just less than two years before Plaintiff disclosed the same form of expert report as in Kerala Corp., from the same expert, in this case), the Kerala Corp. Court held:

> Plaintiff's problem is that he has not presented any evidence to show that removal is readily achievable even though he will have the initial burden to do so at trial. He has not even provided evidence regarding any proposed solutions at all . . . With respect to Plaintiff's expert's declaration (and attached report), it merely identifies the alleged barriers. It does not propose solutions. . . Plaintiff's purported expert report contains no opinion for the cost to remove the alleged barriers, no opinion on a design for the removal of the alleged barriers, and no opinion regarding the effect of the barrier removal on the finances and operation of the facility . . . In short, Plaintiff's expert provides, at best, a conclusory opinion that is neither probative nor helpful.

Id. at 26-27.

To quote Yogi Berra, this case is *déjà vu all over again*. Plaintiff in this case has moved for summary judgment, and filed the same style of expert report as in Kerala Corp., from the same expert as in Kerala Corp., listing alleged barriers but silent as to any design for barrier removal,

13

silent as to the effect of barrier removal on Defendants or their finances, and silent as to the effect of remediation on the operation of the facility – just as in Kerala Corp.[11]

Plaintiff must by now understand (of if he does not actually understand, he certainly *should* by now understand) that he is continuing to prosecute this case without the minimum expert evidence needed to meet his initial burden and avoid a judgment on partial findings at trial – and yet, he vexatiously persists. In any event, whether at summary judgment or at trial, Plaintiff cannot prevail, because he does not have the baseline expert testimony that is needed for any Title III ADA plaintiff to prevail.[12]

### C.   Plaintiff Does not Evidence that He has Standing

Plaintiff has not proffered any evidence of discrimination or injury in fact. Instead, Plaintiff relies on mere conclusory assertions of the existence of alleged barriers. A Title III

---

[11] Plaintiff's own Motion for Summary Judgment acknowledges that Plaintiff has the burden to establish that barrier removal is readily achievable and lists four of the non-exclusive factors to be considered in making that determination [D.E. 26, Pg. 10], yet Plaintiff argues that he is entitled to summary judgment without even attempting to show any of the factors that it is his undisputed burden to establish. His expert has done nothing to, in Plaintiff's own words, "show the nature and cost of the action needed," "the overall financial resources of the facility" etc. Instead, Plaintiff apparently hangs his hat or the extremely misleading argument that changes to parking facilities are readily achievable simply because the DOJ technical assistance manual says that they are. *D.E. 11, Pg. 12*. This is wildly incorrect. DOJ technical assistance is not a substitute for the burden imposed on Plaintiff by the Eleventh Circuit Court of Appeal, and in any event:

> The Manual does not provide sufficient evidence to satisfy Plaintiff's burden either. Although Plaintiff does not reference a specific section of the Manual, it is clear he is referring to section III-4.4200, which provides, in pertinent part, that "[t]he Department's regulation contains a list of 21 examples of modifications that may be readily achievable," including "[c]reating designated accessible parking spaces" (emphasis added). But Plaintiff completely ignores the word "may" and other important language indicating that while the examples listed are often ready achievable, that is not universally true. On the contrary, the Manual makes clear that there is "no definitive answer" to what barriers it is readily achievable to remove, noting that "determinations as to which barriers can be removed without much difficulty or expense must be made on a case-by-case basis." The Manual further provides that the list of twenty-one examples "is intended to be illustrative" and that the examples listed "will be readily achievable in many instances, but not in all."

Kerala Corp., 2020 U.S. Dist. LEXIS 245819 at *28.

[12] **Plaintiff has also not established that the subject property is a "place of public accommodation" pursuant to the ADA** (in support of this "fact" he cites only his own complaint) [SOF, ¶14], or that he is disabled for purposes of ADA coverage SOF, ¶4.

14

plaintiff must include facts "from which this Court can infer that Plaintiff could not fully enjoy Defendants' facilities, services, goods, and amenities *because of his encounter with any of the barriers listed*." Campbell v. Grady's Bar Inc., 2010 WL 2754328, at *1 (S.D. Fla. July 12, 2010). Otherwise, the "Court is left to guess the manner in which Plaintiff suffered alleged discrimination under the ADA." *Id.*; *see also* Access Now, Inc. v. S. Florida Stadium Corp., 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001) (a plaintiff's entry into or onto a property "does not automatically confer upon him a presumption that he was injured by any and all architectural barriers therein; his entitlement to relief depends on his showing that he was in fact injured, or subject to discrimination, as a result of the alleged violations"); Stringham v. 2921 Orlando Drive LLC, 2014 WL 2215769, at *2 (M.D. Fla. May 28, 2014) ("A laundry list of alleged barriers together with the barest allegation that Plaintiff either encountered some barrier or is a tester is simply insufficient to show an injury-in-fact"); Hilson v. D'More Help, Inc., 2015 WL 1737688, at *5 (S.D. Fla. Apr. 16, 2015) (dismissing Title III claim where plaintiff merely "recite[d] a barebones, pro forma, narrative of Defendant's alleged Title III noncompliance").

Plaintiff does not evidence *how* or *why* the alleged barriers resulted in a lack of access. Plaintiff never accessed the subject property. *SOF, ¶5*. Plaintiff does not allege or attest to any facts explaining why or how he needs access to this very specialized glass and glazing company's property. He has not established how any of the claimed barriers impacted him, why he went to the property, whether he purchased anything at the property or even whether he went inside the building at the property (which he could not have). Simply identifying alleged barriers with a conclusory statement that the barrier precluded access is insufficient as a matter of law for Plaintiff to meet his burden to prove standing. "Article III standing requires *a concrete injury* even in the context of a statutory violation." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1549 (2016); *see also*

Nicklaw v. CitiMortgage, Inc., 855 F.3d 1265, 1268 (11th Cir. 2017) (citing Spokeo in support of holding that plaintiff failed to allege concrete injury and finding "the violation of a legal right alone does not satisfy the concrete injury requirements"); Tarr v. Burger King Corp., 2018 WL 318477, at *2 – 4 (S.D. Fla. Jan. 5, 2018) (dismissing claims where plaintiff failed to connect the alleged statutory violations with any concrete injury); Longhini v. Pollo Operations, Inc., 2017 WL 5507565 (S.D. Fla. Nov. 7, 2017) (dismissing allegations for "purported violations without an explanation of the corresponding injury"); Gesten v. Burger King Corp., 2017 WL 4326101, at *6 (S.D. Fla. Sept. 27, 2017) (citing Spokeo and finding plaintiff's alleged injury is "precisely the type of abstract injury that Spokeo held was insufficient to satisfy the requirement of concreteness"); Stacy v. Dollar Tree Stores, Inc., 2017 WL 3531513, at *4 (S.D. Fla. Aug. 11, 2017) (citing Spokeo and finding plaintiff's claims asserted "only a bare procedural violation … and are thus not cognizable in federal court"); Higgins v. Trident Asset Mgmt, LLC, 2017 WL 1230537, at *2 (S.D. Fla. Mar. 28, 2017) (citing Spokeo and finding plaintiff lacked standing when he only alleged "a bare procedural violation, divorced from any concrete harm"); Doe v. Nat'l Bd. of Med. Examiners, 199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated").

### D.     **Plaintiff Fails to Evidence Entitlement to Injunctive Relief**

Plaintiff has failed to evidence a likelihood of future injury. "To assess the threat of future violations of the ADA, courts have generally focused on four factors when deciding the likelihood that a plaintiff will return to the defendant's facility and suffer a repeat injury." Norkunas v. Seahorse NB, LLC, 720 F. Supp. 2d 1313, 1316 (M.D. Fla. 2010). Those are "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's

16

frequency of travel near defendant." *Id.* (quoting Fox v. Morris Jupiter Assocs., 2007 WL 2819522, at *9 (S.D. Fla. Sept. 21, 2007)). Here, there is no record evidence regarding the proximity of the subject property to Plaintiff's residence, Plaintiff failed to evidence any past patronage of defendant's business (or even any past visit to the subject property), Plaintiff has failed to evidence any definite reason for needing to "return" to the subject business, and finally, Plaintiff's testimony that he "frequently visits the area" is conclusory, unaccompanied by any specific facts at all, and therefore meaningless. See, e.g., Leigh, 212 F.3d 1210, 1217; St. Louis Condo. Ass'n, Inc., 2019 WL 2013136, at *1; St. Elien, 2020 WL 1689906, at *1.

### VI. Conclusion

Plaintiff bears the burden of proof on numerous points, and he has failed to affirmatively establish with actual and competent evidence the absence of genuine issues of material fact as to any one of those points. Accordingly, the Court should deny Plaintiff's motion for summary judgment. And because the record evidence also demonstrates that Plaintiff lacks standing, this Court accordingly lacks subject matter jurisdiction, and should consider dismissal on that basis.

Dated: February 27, 2023

                                  Respectfully Submitted,

                                  LAW OFFICES OF NOLAN KLEIN, P.A.
*Attorneys for Defendants*
5550 Glades Road, Suite 500
Boca Raton, FL 33431
PH: (954) 745-0588

By: */s/ Nolan Klein*
NOLAN KLEIN, ESQ.
Florida Bar No. 647977
klein@nklegal.com
amy@nklegal.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing instrument was e-filed with the Clerk of the Court using CM/ECF, this **27th** day of **February,** 2023.

By: */s/ Nolan Klein*
NOLAN KLEIN, ESQ.
Florida Bar No. 647977

**SERVICE LIST:**

**RONALD E. STERN, ESQ.**
Florida Bar No. 10089
**RONNETTE GLEIZER, ESQ.**
Florida Bar No. 87417
THE ADVOCACY LAW FIRM, P.A.
1835 East Hallandale Beach Blvd., Suite 757
Hallandale Beach, FL 33009
Ph:   (954) 639-7016
Fax:   (954) 639-7198
ronsternlaw@gmail.com
advocacylawfirmpa@gmail.com
advocacylaw.paralegal@gmail.com
*Attorneys for Plaintiff*